Mr. Minegar, you were court-appointed to take this appeal. You have the thanks of the court for your fine advocacy for your client, and thanks to your firm as well. Thank you. All right, our third case this morning is Servotronics v. Rolls-Royce.  Good morning, Your Honors. Karen DeGrand on behalf of the appellant, Servotronics, Inc. May it please the court, counsel. The question before the court is whether the Rolls-Royce Servotronics arbitration in London is a foreign or international tribunal under Section 1782. Servotronics says it is, and that its position finds support in the Supreme Court's decision in Intel v. Advanced Micro Devices. The court has before it a number of decisions across the country. District courts split within circuits in this circuit, in the 2nd, in the 11th, and possibly the 9th. So there's quite a bit of writing on this topic. In Intel, like here, the foreign nature of the proceeding was a given, so the focus was on the word tribunal. And that is the threshold question in this case as well for whether the district court had the authority to entertain a Section 1782 application. We asked the court to follow the Supreme Court's guidance based on the terms common meaning, confirmed by the context, and the history of the 1964 amendment of the statute. And Intel defines tribunal as including arbitral tribunals. According to Intel, a tribunal is a body that performs a specific adjudicatory function. Its proceeding leads to a dispositive ruling, a final action, a body that acts as a first instance decision maker. This is the functional lens the Supreme Court used to determine whether a tribunal was involved in Intel. And turning to the record in this case, the Chartered Institute, the arbitral body, meets Intel's criteria. Servitronics attached to its application, the affidavit of Queens Council Barrister Akhil Shah, which is unrebutted on the record. He explained the applicable rules of the Chartered Institute, which also are on the record, and the undisputed fact that the Rolls-Royce servitronics contract is governed by the laws of England and Wales. That governs any disputes. And notably, Mr. Shah cites the ability of the arbitrator under the Chartered Institute rules to receive evidence that is amassed outside the UK. So the submission on the record is clear that the arbitration panel for the Rolls-Royce servitronics dispute will function as a first instance decision maker. At this point, you filed your application before the tribunal had even been established, right? The arbitration had been begun by the – Before the tribunal had been established. The panel was not completed at that point. That's correct. Okay, thank you. And then has the panel requested this information? The panel has not specifically requested this information. Let me – we have limited time, so let me just raise several concerns with you, Mr. Grant. Certainly. One is simply that we're talking here about allowing federal district judges to imprison United States nationals for failing to provide testimony for the benefit of foreign and international tribunals, right? I'm not aware that they are in prison for it. Presumably 1782 would be enforced through contempt, right? It could be. Right. It could be. Okay, so we're talking about prison. But this would be a discretionary issue for the district court. But we're talking about that kind of power to compel testimony for foreign tribunals, right? The power would be within the district court to – My problem is that seems like – we don't even grant that authority to domestic arbitrators, do we? Private arbitrators under the FAA? Under the FAA, under Section 7, subpoenas can be enforced by a district court. For testimony? For testimony at an arbitration hearing. But the subpoena has got to go to a district court to enforce that. The arbitrator, him or herself, doesn't have the ability to. The subpoena is enforced by the district court and is issued by the arbitrator in that situation. Isn't there a difference, though, between the position you're taking and the powers under the FAA for pretrial testimony, pre-hearing testimony? I think there may be a difference, but I don't think that that compels a different reading of 1782. My concern is that under your reading of the statute, private foreign arbitration tribunals would have broader powers to compel discovery than domestic arbitration panels. Well, the foreign arbitration tribunal wouldn't compel discovery. The discovery would be amassed in the U.S., and the point of it is to, at least in my view, Your Honor, the point of it is to, in comparison to compelling testimony and the production of documents from a third party under Section 7 of the Arbitration Act, in a similar situation for a foreign arbitration, there is no ability by the arbitrators to obtain the evidence from the U.S. of a non-party. So in the Section 7 situation, the arbitrator can issue a subpoena to compel a person to appear and testify at a hearing and produce documents. There's no similar ability in the foreign proceeding, and therefore this section provides either the foreign tribunal or a litigant the ability to amass that evidence in the U.S. within the discretion of the district court and for use in the foreign proceeding. Let me identify the concerns a little more specifically. Okay. One, under the FAA, we do have Section 7. Correct. We have no explicit language extending this kind of power to foreign private arbitral tribunals. And that seems like a pretty major policy shift, pretty major policy question to extend compulsory powers to private tribunals, not subject to diplomatic kinds of restrictions the way government-established tribunals might be. And while Congress may or may not want to extend that power, it would be odd to do that without having mentioned that in the legislative history. I also think it would be helpful if you could address the slippery slope issues that you did not want to address in your reply brief, namely what counts as an international or foreign tribunal as you read the statute, and what counts as a tribunal, for example, with respect to religious courts. I think you said, well, nothing unorthodox would need to be reached, but I don't know how to apply that standard that you're inviting us to apply. There are many questions in your question, Your Honor. I will start with the last one, if I may. And to the extent there is a comment in one of the cases about feudal patriarchs, possibly religious courts. Of course, what I would say is that the district court in that situation looks to determine whether is this a first-instance decision-maker that is reaching a final decision. And that is the way that Intel described a tribunal, and the fact that there has been no distinction in the statute between private and state-sponsored arbitrations, I believe, and I think it's consistent with the way that the Supreme Court interpreted the term in Intel. The court didn't interpret that term in Intel. You're pressing very, very hard on what is a parenthetical reference to a law review article or an academic article in dicta. So your whole argument on Intel rests on a very slight passage that was not decisive in the case. It had nothing to do with arbitration. That's correct that it didn't have to do with it, but that's not the entire basis for our position. Well, you're asking us to create a circuit split with the Fifth and the Second Circuits based on the Supreme Court's decision in Intel, based on this parenthetical description of a passage in an academic article. That's a very aggressive argument, and you have to back it up. Is there any evidence that the parenthetical quote from the academic article and its reference to administrative and arbitral tribunals meant private arbitration? Beyond that article or beyond that reference, Your Honor. I'm talking about what is going on in the article from which this passage quotes. What is the surrounding discussion? Does it have any evidence to suggest that the author of the article was talking about private arbitration when he referenced administrative and arbitral tribunals? That phrase suggests public arbitral tribunals, not private arbitration. Well, the author of the article wouldn't agree with the Court's statement, and the author of the article was Hans Schmidt, whose views of Section 1782, as amended in 1964, were discussed and cited with approval throughout the Intel decision. In this passage of the article, is he discussing private arbitration? I think that includes private arbitration. Based on what evidence? What other surrounding passages from this snippet of a parenthetical quote in the Intel decision suggest that he was talking about private arbitration? I can't recreate for the Court at this moment the sentences that were surrounding that specific sentence. That would be necessary to your argument, because you'd have to persuade us that he was actually talking about private arbitration, and the Supreme Court knew that when it dropped this parenthetical quote in a passage of dicta in the Intel decision, which had nothing to do with arbitration. Your Honor, as far as Professor Schmidt is concerned, the quote pertains to a 1965 note that he wrote that discussed the work of the Rules Commission that led to the recommendations that led to a pretty dramatic change in 1782 that dropped the reference to judicial and instead inserted into the statute a reference to foreign or international tribunals. It's clear from, if not from 1965, it's clear from the statements in a number of articles that Professor Schmidt wrote subsequent to that. What's in his head is irrelevant. What's important is the surrounding text in this article, because that's what the Supreme Court dropped into the Intel decision, which, again, had nothing to do with arbitration. So it's a passage of dicta, it's a citation to Professor Schmidt's article, and a parenthetical reference to administrative and arbitral tribunals. Is there anything in the surrounding text of that statement that suggests that Professor Schmidt was referencing private arbitration? I cannot cite that to the Court at this time. But what I can cite is a great number of cases that predated 1964 and Congress's somewhat dramatic change in the statute and postdated it where the word tribunal was used to indicate arbitrations, private arbitrations, without any restriction. To the extent that the Second Circuit and the Fifth Circuit, and of course this was before Intel, interpreted the statute, yes, Intel did not address arbitrations other than in passing. I agree with that. But what I think is most important from Intel is the way that the Supreme Court gave a broad reading to the statute, including the word tribunal, and had a fairly definite standard for what a tribunal is. And it seems also that the guidance of the Supreme Court from Intel teaches that the concerns and the limitations that the respondent in that case and the respondent in this case would like to impose. There was a public law dimension to the Intel case, was there not? It involved a public entity. It involved a public entity. There's no public law dimension to this case. This is purely private arbitration. You contracted for this form of dispute resolution with all of its limitations. Contracted for it, yes. And the contract and the rules of the arbitration to which the parties agreed are bound by the law of England and Wales, and also make clear that the parties will be able to use discovery and discovery in whatever legal way is permitted for the arbitration. The arbitration rules do not exclude the presentation of this kind of evidence, of evidence used under 1782 to be used in arbitration. Recognizing that every court of appeals to have addressed this question has held against your position that 1782 permits this. Well, I will. That's a significant limitation on the discovery that you contracted for. But there's also an asterisk to that, Judge, which is the 11th Circuit decision in the Consortio case before it was vacated. Okay. Thank you, Your Honors. I'll reserve the rest of my time for rebuttal. Thank you. Mr. Paisner. Thank you. May it please the Court, Michael Paisner representing Apelli, the Boeing Company, and appearing on behalf of Apelli Rolls-Royce as well, and I'm joined at counsel's table by Larry Kaplan representing Rolls-Royce. Judge Hamilton and Judge Brennan, I want to address the point about the FAA, and I think this is a very important point, because construing Section 1782 to apply to private arbitration would create a serious conflict with the FAA and the pro-arbitration policies it embodies. This was an issue that was of significant concern to the Second and Fifth Circuits in Bear Stearns and Biedermann. It should be a significant concern to this Court as well. Just recently, in Epic Systems Corp v. Lewis, the Supreme Court reiterated the importance of avoiding interpretations of federal law that would render the arbitration process slower, more costly, and more likely to lead to procedural morass than final judgment. Yet that would be precisely the result of holding that Section 1782 authorizes discovery for use in private arbitration, as this case amply demonstrates, with collateral discovery disputes now proceeding in two separate U.S. jurisdictions. And let me just step back and emphasize just how radically the application of Section 1782 would transform the standard discovery process in private arbitration. Section 1782 authorizes any interested person to trigger full discovery under the federal rules of civil procedure anywhere the recipient of that discovery resides or can be found. That is far broader than the discovery authorized under the FAA or any other arbitration law that I'm familiar with. The FAA authorizes only the arbitral panel to order discovery, not any interested person. It can only be judicially enforced in the district where the panel is seated, not in any district where the recipient resides or can be found. And the FAA does not provide for depositions or pre-hearing document discovery of precisely the type that Servotronics is seeking in this case. What's the geographic scope under the FAA Section 7 of a panel's subpoena power? Well, so the Second and Fifth Circuit noted some uncertainty about that question. My understanding, Your Honor, is that it applies domestically. Now, there's a very important caveat to that. So you can order somebody to fly from California to Chicago for an arbitration here? Under the FAA for a domestic arbitration? Yeah. Well, they would have to be within the jurisdiction of the court in which the panel is seated. So you could only seek enforcement in that district. It would depend on whether there's enforcement authority over the recipient of the discovery. But let me just emphasize some of the implications. And going to that point, Judge Hamilton, some of the implications. First, applying Section 1782 to private arbitration would have the extraordinary result that, as you noted, a participant in private arbitration in a foreign country would have access to far broader discovery through the U.S. courts than a participant in a comparable domestic arbitration. Second, it would spawn innumerable disputes about whether a U.S.-based domestic arbitration, so subject to the FAA, is actually international for purposes of Section 1782. And that's actually happened in several cases. Litigants have come in and argued that arbitrations in L.A., in Miami, are actually international arbitrations for purposes of Section 1782. Of course they do that, because once you're in the arbitration, you want to have access to full discovery under the federal rules of civil procedure. But that just demonstrates the absurdity of this interpretation. And finally, and I think this is a very significant point, Section 1782 would displace the FAA in the significant subset of arbitrations that are subject to both statutes. Certainly domestic arbitrations, where there is an argument that it's international because one of the parties is international, because the dispute is over a piece of property in a foreign country, there are many, many ways that parties could try to argue it's international. And now you've got a conflict between the FAA, Section 7, which is very narrowly cabined discovery, and Section 1782, this very broad discovery under the federal rules of civil procedure. And the Supreme Court has been crystal clear. Interpretations of federal law that would abrogate the FAA in that way are not to be adopted absent clear and manifest evidence of such congressional intent. Just in Epic Systems Corp., they reiterated that standard. There's no evidence of that intent here. Now, Judge Sykes, I want to address this parenthetical from Intel. As you noted, Your Honor, this was a passing reference on an unrelated proposition. There is no indication the court intended to indicate that Section 1782 applied to private arbitration or adopt Professor Smith's analysis wholesale. Turning to the substance of it, Professor Smith, very respected international law scholar. However, here there is a pre-enactment Professor Smith and a post-enactment Professor Smith. Pre-enactment Professor Smith never said a single thing about arbitration, let alone private arbitration. Then he writes this article in 1965. By the way, Your Honor, did not say private arbitration, said administrative or arbitral tribunals, paired with the term administrative clearly indicating that it's a governmental entity. And then it's not until 1998 that Professor Smith finally comes around to the view 30 years after the statute is enacted that this statute authorizes discovery for use in private arbitration. Just doing some textual analysis of the parenthetical, and of course we have to take a parenthetical in a Supreme Court opinion seriously. Significantly, administrative or arbitral tribunal, all of the rest of the terms in that parenthetical are referring to governmental entities. So it's only natural that you would interpret the reference to arbitral tribunal to be referring to a governmental entity. And that is consistent with how the term is used in the U.S. Code. There are a few references to arbitral tribunals in the U.S. Code. We cite them in our brief. They are all uniformly references to adjuncts of foreign countries or international agencies, not private sector entities. Let me now turn to the textual point, because I think this is a very critical point. The text is clear here. All the relevant sources of statutory meaning make clear that a foreign or international tribunal is an inherently sovereign entity. Let's start with the dictionary definitions. The contemporaneous dictionary definitions from the time of enactment make that definition abundantly clear, most significantly the 1951 edition of Black's Law Dictionary, which defines tribunal in terms of judges and courts, all governmental actors. Let's look at other statutes. Nearly contemporaneous legislation, we cite the examples in our brief, refers separately to arbitration on the one hand and proceedings in tribunals on the other. That demonstrates that Congress did not understand the term tribunal to subsume all arbitration. And I've already noted the uses of the term arbitral tribunal, all references to governmental entities. It suggests. I don't know that it demonstrates. But I frankly don't find the plain language argument here very persuasive. But it seems to me that the petitioner's strongest linguistic argument, textual argument, has to do with the dropping of language from the old Section 270, which applied to tribunals established pursuant to an agreement between the U.S. and any foreign government or governments, which certainly sounds like that would exclude private arbitration tribunals. But that language was dropped in the 1964 amendment consolidating the two. Could you address that? Certainly, Your Honor. So first of all, it seems indisputable that the term international tribunal refers to a governmental entity. That's what the Second and Fifth Circuit both concluded, just on that narrow term. That's what the Second and Fifth Circuit concluded. Even Professor Smith, in his pre-enactment writings, defined an international tribunal as an adjudicatory body established by agreement among multiple governments. And, of course, the term international implies internation among different governments. Now let's talk about Section 270. The first thing I would say, just as a textual matter, is that if you look at 270D, so I believe you were quoting from 270A. Correct. And if you look at 270D, and I will read from that here, it's Section 5 in the stat citation, provides that the agent of the United States before any international tribunal or commission, whether previously or hereafter established, in which the United States participates as a party whenever he desires to obtain testimony or the production of books and papers by witnesses, may apply to the United States District Court. So that only has the qualifier in which the United States participates as a party. And that is the critical point. When Congress amended Section 1782 and repealed 270, the intent, and this is made clear, Judge Hamilton, in the legislative history, it only intended to dispense with the requirement of U.S. participation in the international tribunal. There is no indication, and the legislative history says exactly the opposite, that it intended to fundamentally change the meaning of the term international tribunal to include private entities. Now, Judge Hamilton, I want to try to convince you that the textual argument is a strong one. And in an effort to do that, let me direct the Court to the fourth sentence of Subsection A, which I think is a critical context for interpreting this statute. And this is the sentence beginning, And the sentence says, Now that, of course, presumes that a foreign country will be prescribing the practice and procedure to govern any foreign tribunal. Of course, when it comes to private arbitration, it's the arbitral fora itself or the parties in their agreement, not the host government, that prescribes the practice and procedure. Yet those sources of authority go unmentioned, again, strongly indicating that Congress did not have private arbitration in mind. Let me also address the legislative history, because the legislative history is definitive as well. That history demonstrates the purpose of the statute was to provide aid to foreign litigants in order to encourage foreign countries to reciprocate by providing aid to U.S. litigants. The entire focus is on government-to-governmental relations, not private entities. Moreover, as the Supreme Court noted in Intel, Congress, in establishing the Rules Commission in 1958 to draft the amendments that would become the 1964 amendments, directed it to recommend revisions for the rendering of assistance to foreign courts and quasi-judicial agencies, both governmental entities. House and Senate reports are similar. They refer to investigating magistrates, administrative tribunals, quasi-judicial agencies, no reference to any kind of private sector entity. Judge Hamilton, as you noted, surely a public policy change of this magnitude would have elicited at least some comment somewhere in the statute or the legislative history, and yet there is none. And finally, just on Intel, Intel is completely consistent with the district court's ruling below. In Intel, the court held that the European Commission was a foreign or international tribunal for purposes of Section 1782 when it acts as a first-instance decision-maker on competition law issues. The case had nothing to do with private arbitration. There was no dispute the European Commission was and is a governmental body. The court didn't make any reference to Bear Stearns or Biedermann, let alone purport to overrule them. And there is nothing in that opinion to suggest that the court intended to apply Section 1782 to any body exercising an adjudicatory function, even one that's purely private and contractual in nature. Counsel, with respect to your slippery slope arguments about both what's international and foreign and what's a tribunal, why isn't the discretion of the U.S. District Court a sufficient answer to that, to the potential for abuse? Well, Your Honor, first of all, because the statute says what it says, and this is a threshold requirement, and so it should be enforced. But second of all, look, this case demonstrates the problem. If you have district courts that are going to have to get involved in all of these international arbitrations, that is going to inject uncertainty into the process. Look, when parties sign up to an arbitration agreement, it's with the expectation and understanding that it's going to be streamlined, efficient, and limited. And now you are opening up to this broad third-party discovery. You know, the last thing Rolls-Royce wants in this case is for its customer Boeing to now be wrapped up in this dispute. And that's why it entered into an arbitration agreement, so it wouldn't have to deal with that. And that's why many parties enter into international arbitration agreements. And this interpretation opens it up. Every time you've got a party that wants to serve a subpoena, you have to go to the district court and have it apply the discretionary factors. I see my time has expired. Thank you, Your Honors. Thank you. Mr. Grant. Thank you, Your Honor. A couple of points. As far as this concern about, you know, now we're going to, if we employ Section 1782 and read what Rolls-Royce and Boeing are requiring as a basis for defining the authority of the court, that is a concern that was answered directly by the majority in Intel. And in response to a concern that was raised by Justice Breyer in his dissent. And the court noted that, and again, the court went back again and again, the Intel court went back again and again to the important role of the district court in exercising its jurisdiction under the four factors that are the second part of the analysis after the district court's authority is determined. And the Supreme Court specifically said that this is not a concern, that it relied on the district courts, that in studying this issue, and in this instance I think citing a later, I think it's a 1998 article written by Professor Smith, said that it was not found to be a problem, and in fact said that it was more imaginary than real. So I think there's a little bit of hyperbole there. And again, this is what Congress wrote. This is how Congress wrote the statute under the plain language we submit. So this is not as much a concern. Most of what I hear from counsel and what was written in the brief is an argument that tribunal doesn't mean arbitration. And, you know, they were able to find. Your time has expired. You will have to wrap up. Okay. Well, thank you, Your Honor, and I will wrap up. It seems to me that the distinction between a government-related arbitration and a private arbitration is not drawn by the statute and is not supported by the analysis, the broad analysis, given the statute by the Supreme Court in Intel. Thank you very much, Your Honor. Thank you. Our thanks to all counsel. The case is taken under advisement.